**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ARCHDIOCESE OF SANTA FE;
MARTIN NCHEDO UMEATUEGBU,

      Plaintiffs,

    v.

MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security;
JOSEPH B. EDLOW, Director U.S.
Citizenship and Immigration Services; U.S.
DEPARTMENT OF HOMELAND
SECURITY; and U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

      Defendants.

Case No.: 1:26-cv-1666

**COMPLAINT FOR RELIEF UNDER THE RELIGIOUS FREEDOM AND**
**RESTORATION ACT, FOR DECLARATORY JUDGMENT, AND**
**INJUNCTIVE RELIEF**

1. Plaintiffs Archdiocese of Santa Fe and Martin Nchedo Umeatuegbu respectfully submit this complaint to compel Defendants to take action on their pending Form I-129. Plaintiff Archdiocese of Santa Fe filed Form I-129 Petition for a Nonimmigrant Worker (religious worker) with U.S. Citizenship and Immigration Services ("USCIS") on December 31, 2025. Defendants have improperly withheld action on Plaintiffs' petition to the detriment of each Plaintiff. By deliberately refusing to take action on Plaintiffs' petition, Defendants will deny Plaintiff Archdiocese of Santa Fe the minister of its choice. The Defendants' deliberate inaction infringes upon Plaintiffs' ability to engage in a sincerely held and closely protected religious exercise, that being, their choice of minister, in violation of the Religious Freedom and Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(a)–(b) (2006) and the First Amendment of the U.S. Constitution. "The relationship between an organized church and its ministers is its

1

lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *McClure v. Salvation Army*, 460 F.2d 553, 559-560, (5th Cir. 1972).

2.    Furthermore, the Defendants' inexcusable delay in acting on the Plaintiffs' petition violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), 706(2)(A), (C), (D), and warrants an exercise of this Court's mandamus power under the Mandamus and Venue Act ("Mandamus Act"), 28 U.S.C. § 1361. The Plaintiffs request relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 and the Constitution of the United States.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1651, as a civil action arising under the Constitution, laws, or treaties of the United States (Federal question); 42 U.S.C. § 2000bb–1(a)–(b) the Religious Freedom and Restoration Act, (2006), reviewing whether government action substantially burdens a person's religious exercise; 28 U.S.C. §§ 2201-02 (declaratory relief); and 5 U.S.C. §§ 701 *et seq*., the Administrative Procedure Act (APA), as an action to hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law and the Immigration & Nationality Act (INA) and regulations implementing it (Title 8 of the C.F.R.).

4.    There is no jurisdictional bar to review under 8 U.S.C. § 1252(a)(2)(B)(ii) because: (1) the provision does not preclude review of an agency's failure to act; and (2) USCIS has a

2

non-discretionary duty to adjudicate the Plaintiffs' pending petition which meets the criteria for approval.

5. 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action does not seek review of a removal order, but is simply an action to compel USCIS to adjudicate Plaintiffs' unreasonably delayed petition, this Court retains original mandamus jurisdiction under 28 U.S.C. § 1361. The 10th Circuit Court of Appeals has construed 8 U.S.C. § 1252 narrowly and has consistently found it lacks jurisdiction to review anything outside of a removal order. *Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1243 (10th Cir. 2012); *Hamilton v. Gonzales*, 485 F.3d 564, 565–66 (10th Cir.2007); *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir.2006) ("We have general jurisdiction to review only a final order of removal."); *Abiodun v. Gonzale*s, 461 F.3d 1210, 1217 (10th Cir.2006); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1353 (10th Cir.2004).

6. Furthermore, 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"

7. Because adjudication of a properly filed religious worker visa petition is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland

3

Security, the Court retains original mandamus jurisdiction over this claim. *See Kim v. USCIS,* 551 F.Supp.2d 1258 (D. Colo. 2008); *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application" for Adjustment of Status); *Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009) ("[T]he Defendant has the discretionary power to grant or deny applications, but it does not have the discretion as to whether or not to decide at all."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary [of Homeland Security] has unlawfully delayed or withheld final adjudication of a status adjustment application."). *Jones v. Gonzales,* Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

8.   The Supreme Court decision in *Patel v. Garland*, 596 U.S. 328 (2022) is inapplicable here. *Patel* dealt with 8 U.S.C. § 1252(a)(2)(B)(i) and more specifically with the term *regarding* in that subsection. However, 8 U.S.C. § 1252(a)(2)(B)(i) refers to 5 specific statutes none of which are applicable here.

9.   8 U.S.C. § 1252(a)(2)(B)(ii) has a greater reach into other types of decisions, but not contain broadening language like 8 U.S.C. § 1252(a)(2)(B)(i) which uses the term *regarding*. While there may have been some cases that have imported *Patel*'s broad reading of (i) into (ii), the Tenth Circuit has not done so. In a case arising in the District of New Mexico, *Ayala v. Noem*, 781 F.Supp.3d 1187 (D. N.M. May 6, 2025), the court was faced with this exact issue and decided that the broad reading of (i) shall not be carried into (ii). The court in *Ayala* looked at *Bouarfa v.*

*Mayorkas*, 604 U.S. 6, 19 (2024) which noted that it "need not resolve whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review threshold determinations that the agency must make before exercising discretion." This leaves the question of whether (ii) should be read as broadly as (i) an open question which the *Ayala* court decided it should not be. The court went through settled principles of statutory construction and found that the differing language between the two subsections ((ii) not containing broadening language such as "regarding" found in (i)) is presumed to be intentional and purposeful. *Ayala*, at 1200-01.

10. The *Ayala* court also rejected an argument by Defendants in that case which argued that so long as some part of the decision-making process is specified as discretionary, then every other piece is automatically subsumed into that discretionary categorization therefore barred from judicial review under § 1252(a)(2)(B)(ii). The court found that to be reading too much into the statute. It held that the more natural reading is that each decision and action is to be treated individually in determining whether it is considered discretionary of mandatory and that the delay in that particular case was not discretionary. *Id.*, at 1201.

11. The USCIS decision on an I-129 petition for religious worker is not a discretionary one.

12. "The default rule is that agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331… even if no statute specifically authorizes judicial review." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56-57 (1993)). Therefore, there is a strong presumption Congress intended to provide judicial review of administrative actions. *See Kucana v. Holder*, 558 U.S. 233, 251 (2010).

13. Plaintiffs have standing to assert relief in this action.  42 U.S.C. § 2000bb–1(c). *See O Centro Espirita Beneficiente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239, 1259 (D.N.M. 2017). Plaintiff Umeatuegbu is physically present in the United States. Both Plaintiffs are harmed by this deliberate inaction. The church is deprived of its minister. Plaintiff Umeatuegbu will not be able to minister to his flock without this petition being approved in a timely fashion, harming the Archdiocese of Santa Fe and their congregants. Further, other priests will have to fill the void left by Plaintiff Umeatuegbu, stretching their margins even thinner. Plaintiff will suffer concrete injury including the loss of its spiritual leadership, disruption to worship and sacramental life, diversion of organization resources, impaired ability to conduct its religious programs, and ongoing uncertainty and instability in its religious operations.  In addition, Plaintiff Umeatuegbu will suffer financial hardship given that he will be unable to work in any capacity in the USA starting on June 5, 2026.

14. Venue is proper in the District of New Mexico pursuant to 28 U.S.C. § 1391(e)(1)(C). Plaintiffs sue the Defendants in their official capacities as officers and employees of the United States. Plaintiff Archdiocese of Santa Fe is a New Mexico nonprofit corporation and is headquartered/resident in Albuquerque, NM, within the District of New Mexico. Plaintiff Umeatuegbu is also a resident of this District.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. No exhaustion requirements apply to Plaintiffs' complaint for a Writ of Mandamus. Plaintiffs are owed a duty – the adjudication of their filed I-129 Petition. Defendants have unreasonably delayed and failed to adjudicate Plaintiffs' petition. Plaintiffs have no other adequate remedy available for the harm they seek to redress.

### PARTIES

16. Plaintiff Archdiocese of Santa Fe is a New Mexico corporation and a nonprofit religious organization duly recognized by the IRS. Plaintiff Archdiocese of Santa Fe is a part of the Roman Catholic Church.

17. Plaintiff Martin Nchedo Umeatuegbu is a citizen of Nigeria and a Deacon in the Catholic Church. He is the beneficiary of a pending R-1 visa petition filed by Plaintiff Archdiocese of Santa Fe to serve as their Deacon. After he is ordained, he will become a Priest.

18. Defendant Markwayne Mullin is the Secretary of the Department of Homeland Security, and as such is charged by statute to adjudicate visa petitions, including R-1 visa petitions. He is sued in his official capacity only.

19. Defendant Joseph B. Edlow is the Director of the U.S. Citizenship and Immigration Services, and as such is charged by statute to adjudicate visa petitions, including R-1 visa petitions. He is sued in his official capacity only.

20. The Defendants, Department of Homeland Security ("DHS") and the U.S. Citizenship and Immigration Services ("USCIS") are the agencies responsible for adjudicating and approving visa petitions and providing foreign nationals with evidence of their legal status in the United States.

## LEGAL FRAMEWORK

RFRA

21. The Religious Freedom and Restoration Act of 1994 (RFRA) was passed by Congress in order to protect individuals' and organizations' sincerely held religious beliefs from government interference and burden. It provides in relevant part:

Free Exercise of religion protected

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person –
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest

22. A prima facie violation of RFRA is established by showing 1) a substantial burdening of, 2) a sincere, 3) exercise of religion.  Once a prima facie RFRA violation is shown, the burden shifts to the government to show that it is advancing 1) a compelling interest and that this is the 2) least restrictive means by which to achieve that interest.  42 U.S.C. § 2000bb-1(b).

23. RFRA permeates and amends the entirety of federal law, including laws of general application such as the Immigration and Nationality Act.  RFRA's reach is broad, effecting changes to all federal government action. *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997)("Sweeping coverage ensures its intrusion at every level of government, displacing laws and prohibiting official actions of almost every description and regardless of subject matter."). *See also*, Religious Freedom Restoration Act § 6, 42 U.S.C. § 2000bb-3(a) ("This Act applies to all Federal law ... whether statutory or otherwise, and whether adopted before or after November 16, 1993.").

24. Although RFRA is statutory, it protects First Amendment free-exercise rights. It is well established that "the loss of First Amendment Freedoms, even if temporary, 'unquestionably constitutes irreparable injury.'" *Eternal Word Television Network, Inc. v. Secretary, U.S. Dept. of Health and Human Services*, 756 F.3d 1339, 1350 (11th Cir. 2014) (Quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

25. The First Amendment of the U.S. Constitution protects the free exercise of religion and prohibits the establishment of any religion by the US government. U.S. Const. amend. I. The

8

First Amendment prohibits government involvement in ecclesiastical decisions. Courts have held that the choice of a minister and the relationship the church has with its minister (employment, financial or otherwise) is *per se* religious exercise.  In *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 188 (2012), the Supreme Court stated:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*See also*, *McClure v. Salvation Army*, 460 F.2d 553, 559-560, (5th Cir. 1972) ("The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern."); *Petruska v. Gannon University*, 462 F.3d 294, 306 (3rd Cir. 2006) ("Unlike an individual who can speak on her own behalf, however, the church as an institution must retain the corollary right to select its voice. A minister is not merely an employee of the church; she is the embodiment of its message. A minister serves as the church's public representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise."); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002).

Constitutional Violations

26. In addition to violating Plaintiffs' RFRA rights, the deliberate agency inaction also violations their First Amendment rights. The government is essentially saying to both Plaintiffs

9

that starting from June 5, 2026, neither the church, nor the minister can exercise their religious rights as they see fit.

27. Even if USCIS had discretion in the adjudication process of this petition, Chapter 8 of the USCIS Policy Manual expressly states that "[t]he mere fact that an individual is from a country subject to INA 212(f) restrictions on entry or admission…is not by itself a significant negative factor".  USCIS Policy Manual, Chapter 8, Section C(2) [1]. Therefore, where the totality of the circumstances shows that there are no other "adverse factors" relevant to the particular petition or foreign national beneficiary beyond country of origin, the Policy Manual itself confirms that it would be an abuse of USCIS discretion to refuse to act or to deny this petition based solely on the beneficiary's country of origin.  No other negative factors are present here.

28. A deliberate refusal to adjudicate or deny this petition based solely on the beneficiary's country of citizenship would also be a clear violation of the beneficiary's constitutional rights.  The Fifth Amendment to the Constitution guarantees due process rights to all "persons" within the United States, including non-citizens. Similarly, the Fourteenth Amendment's equal protection clause requires that individuals may not be discriminated against based on race, religion, or national origin. The Supreme Court has confirmed that foreign nationals like the beneficiary who are physically present in the United States, are entitled to constitutional protection. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982).  USCIS' use of only Plaintiff's nationality to justify a deliberate refusal to act is a violation of his Fourteenth Amendment right to equal protection under the law and due process and equal protection rights under the Fifth and Fourteenth Amendment to the U.S. Constitution.

R-1 Religious Worker

---

[1] https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-8

10

29. 8 U.S.C. § 1101(a)(15)(R) provides the statutory authority for the R visa used by nonprofit, religious organizations to allow their ministers to serve their flocks.  It provides as follows:

> (R) an alien, and the spouse and children of the alien if accompanying or
> following to join the alien, who –
>> (i) for the 2 years immediately preceding the time of application for
>> admission has been a member of a religious denomination having a bona
>> fide nonprofit religious organization in the United States; and
>> (ii) seeks to enter the United States for a period not to exceed 5 years to
>> perform the work described in subclause (I), (II), or (III) of paragraph
>> (27)(C)(ii);

APA

30. The Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*., provides for  an action to compel agency action unlawfully withheld and to hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law and the Immigration & Nationality Act (INA) and regulations implementing it (Title 8 of the C.F.R.).

**FACTUAL AND PROCEDURAL BACKGROUND**

31. The Plaintiff Martin Nchedo Umeatuegbu is a Nigerian citizen who has been living in the United States since July 22, 2024. He entered the USA on a valid F-1 visa to attend a Master of Arts program in Theology at Mount Angel Seminary. At all times during his studies, he maintained valid F-1 student status. After obtaining his Master's Degree, the Plaintiff applied for Post Graduation Optional Practical Training ("OPT") and was granted an Employment Authorization Document (EAD) valid from June 5, 2025 to June 4, 2026. Plaintiff Umeatuegbu

11

has been working for the Archdiocese of Santa Fe as a Deacon using his OPT Employment Authorization Card. His EAD expires on June 4, 2026.

32. As a Deacon, Plaintiff Umeatuegbu is responsible for spreading the Word of God and assisting the priest in making sure the Word of God is proclaimed in its entirely to the parish where he is assigned. This includes teaching doctrine to adults but especially to children. He is to enable the people of the parish to do works which promote the Gospel, especially works of social justice. Plaintiff Umeatuegbu reaches out to those who have left the faith. As a deacon, he must assist the priest to make sure the Holy Eucharist is the center of the faithful to participate in Mass in a conscious and active manner. He will be ordained as a Priest on May 23, 2026 and after that, his duties will change slightly to include celebration of Mass, administering the sacrament of Confession and Reconciliation, and Anointing of the Sick.

33. Plaintiff Archdiocese of Santa Fe decided to sponsor Plaintiff Umeatuegbu for an R-1 visa so that he could continue his religious calling and continue to serve at the Archdiocese beyond his F-1 OPT expiration date. Plaintiff Archdiocese of Santa Fe filed a Form I-129 Petition for Nonimmigrant Worker for Plaintiff Umeatuegbu on December 31, 2025, requesting that a change of status to R-1 be approved for Plaintiff Umeatuegbu as of June 5, 2026 and continue for 30 months. I-129 petitions cannot be filed more than 6 months prior to the requested effective start date of employment.

34. On June 4, 2025, President Trump issued Proclamation 10949 ("Proclamation 10949") "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." *See* 90 FR 24497 (June 4, 2025) at https://www.federalregister.gov/documents/2025/06/10/2025-10669/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and. Proclamation

10949's purpose is to restrict the *entry* of foreign nationals who intend to harm Americans or national interests. Nigeria was not listed on this initial Proclamation.

35. On December 16, 2025, President Trump issued Proclamation 10998 ("Proclamation 10998") entitled "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States." *See* 90 FR 59717 (December 19, 2025) at https://www.federalregister.gov/documents/2025/12/19/2025-23570/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states#print. Proclamation 10998 continued the partial *entry* restrictions found in Proclamation 10949 and expanded the list of restricted countries to include Nigeria. Proclamation 10998 states that Nigeria is added to this list due to concerns over "radical Islamic terrorist groups such as Boko Haram and Islamic State" and  concerns about B1/B2, F, M, and J visa overstay rates.

36. On January 1, 2026, the Defendant, USCIS, issued a new Policy Memorandum ("PM-602-0194") which instituted an adjudication hold on all benefit applications for foreign nationals from countries listed in Proclamation 10998, including Nigeria. PM-602-0194 provides exceptions to the adjudicative hold, which do not apply in this case. Neither PM-602-0194 nor the USCIS Policy Manual provides for an end date for the adjudicative hold. The USCIS policy is completely ultra vires and not authorized by either of the above Proclamations since it does not deal with the *entry* of foreign nationals, but with benefit applications of those already here. Furthermore, the Policy Memorandum referenced in this paragraph placed an adjudicative hold on benefit applications, not petitions. The filing in question in this case is a petition filed by the Archdiocese, not a benefit application. Regardless, the agency is refusing to adjudicate.

37. On March 30, 2026, USCIS posted an alert relating to PM-602-0194 on their website titled: "Update on USCIS' Strengthened Screening and Vetting," available at

https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting (last visited 5/7/2026) (the "USCIS 3/30 Alert"). The USCIS 3/30 Alert states that "USCIS has implemented a series of robust actions after issuance of those policy memoranda" and implemented an "Internal Review Process":

> USCIS established an internal process for lifting holds on individual or group cases, requiring comprehensive review by multiple offices. Holds have been lifted for aliens vetted through Operation PARRIS, certain petitions filed by U.S. citizens, intercountry adoption forms, certain rescheduled oath ceremonies, statutory and regulatory decision issuance, refugee registrations for South African citizens/nationals, certain special immigrant visa petitions, certain employment authorization documents, and asylum applications from non high-risk countries, and applications associated with medical physicians. **We continue to review all application types and lift holds for both individual and group cases as appropriate**. (Emphasis added).

38. It is unclear if USCIS has lifted their hold for the Archdiocese of Santa Fe's petition for Plaintiff Umeatuegbu or not.

39. Plaintiffs filed their R-1 petition just before USCIS issued PM-602-0194 and well in advance of when Plaintiff Umeatuegbu's F-1 OPT EAD will expire. The Form I-129 Instructions state that a Form I-129 petition *may not be filed more than 6 months* prior to the date employment is scheduled to begin. Plaintiffs filed their I-129 petition 5 months and 5 days before the requested R-1 employment start date.

40. USCIS has no valid justification for placing a hold on the Plaintiffs' petition and for delaying its adjudication of the Plaintiff's Form I-129. The lengthy and unreasonable delays and the unlawful hold on adjudication of the Plaintiffs' petition has created significant uncertainty and difficulties for the Plaintiffs. Plaintiff Archdiocese of Santa Fe will lose their minister, causing substantial harm and a violation of their religious rights if this I-129 petition is not

14

approved before June 5, 2026. Furthermore, Plaintiff Umeatuegbu will be forced to stop working on June 5, 2026 causing him substantial financial harm and a hinderance of his religious calling.

41. Plaintiff Archdiocese of Santa Fe has spent many tens of thousands of dollars (approximately $100,000) and much time (four years) and effort to educate Plaintiff Umeatuegbu so that he could be ordained to minister in the Archdiocese, first as a Deacon and then as a Priest. The Archdiocese is already understaffed with priests and deacons for its parishes, and a loss of Plaintiff Umeatuegbu after so many years and such monetary investment would worsen its ministerial staffing shortage, especially as many priests are reaching the age of retirement in the next several years. Plaintiff Umeatuegbu currently serves at St. Anne Catholic parish in Santa Fe, New Mexico, and will continue to do so after his ordination to priesthood on May 23, 2026. He will be ministering not only at St. Anne's, but also ministering to the sick and dying at the major local hospital in Santa Fe, Christus St. Vincent Regional Medical Center. Any delay in the approval of his R-1 petition beyond June 5, 2026 will shift a greater burden onto the other minister at St. Anne's as well as those who minister to the sick at Christus St. Vincent.

42. Now, in May of 2026, Plaintiff Umeatuegbu's F-1 OPT EAD expires in two weeks and USCIS has not taken any action on his R-1 petition.

## CAUSES OF ACTION:
## COUNT ONE

## VIOLATION OF 42 U.S.C. § 2000bb–1(a)–(b) (RFRA CLAIMS)

43. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

44. Plaintiffs have a claim for relief under 42 U.S.C. § 2000bb–1(a)–(b). Defendants have substantially burdened Plaintiffs' exercise of religion and failed to meet either of the exceptions provided by RFRA.

45. Congress has expressly legislated that plaintiffs may sue federal agencies under RFRA, "a person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain relief against a government" 42 U.S.C. § 2000bb-1(c). Additionally, RFRA applies to "all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a).

46. In this matter, Defendants have caused substantial burdening of Plaintiffs' sincere exercise of religion through their unreasonable delay in processing Deacon Umeatuegbu's I-129 R-1 Petition. The right to choose a minister is a per se religious exercise. By failing to process Plaintiff Archdiocese of Santa Fe's I-129 R-1 Petition for Plaintiff Umeatuegbu, USCIS has infringed on the Archdiocese of Santa Fe's exercise of religion. As a result, Plaintiffs are entitled to relief under RFRA.

## COUNT TWO

## FIRST AMENDMENT VIOLATION

47. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

48. Plaintiffs have a claim for relief under the First Amendment of the US Constitution. U.S. Const. amend. I. Defendants have substantially burdened Plaintiffs' exercise of religion by deliberately refusing to take action on Plaintiff Umeatuegbu's I-129 R-1 Petition and can provide no rational basis for this action. The First Amendment prohibits government involvement in ecclesiastical decisions, which USCIS has done here.

49. Plaintiff will suffer concrete injury including the loss of its spiritual leadership, disruption to worship and sacramental life, diversion of organization resources, impaired ability

16

to conduct it's religious programs, and ongoing uncertainty and instability in its religious operations.

50. Selecting and employing ministers is a core aspect of Plaintiff's religious exercise and church governance protected by the Free Exercise Clause and principles of church autonomy and ministerial selection. *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 188 (2012).

51. Plaintiff seeks declaratory relief that Defendants' failure to adjudicate the R-1 Petition, and resulting interference with ministerial selection, violates the First Amendment and injunctive relief directing Defendants to adjudicate Plaintiffs' R-1 petition.

## COUNT THREE

### FIFTH AMENDMENT VIOLATION

52. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

53. The Fifth Amendment to the Constitution guarantees due process rights to all "persons" within the United States, including non-citizens. U.S. Const. amend. V.

54. Plaintiff Umeatuegbu is being intentionally treated differently from other similarly situated R-1 applicants because his country of origin is Nigeria. Discrimination based on national origin is unconstitutional and Defendants have no justification for treating him differently.

## COUNT FOUR

### FOURTEENTH AMENDMENT VIOLATION

55. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

56. Fourteenth Amendment's equal protection clause prohibits discrimination against based on race, religion, or national origin. U.S. Const. amend. XIV.

57. Here, Plaintiffs' I-129 Petition for R-1 Status is being deliberately delayed because Plaintiff Umeatuegbu is from Nigeria. If he were from a different country, this petition would not be delayed. USCIS is impermissibly discriminating against Plaintiff Umeatuegbu because of his country of origin.

58. USCIS' use of only Plaintiff's nationality to justify a deliberate refusal to act is a violation of his Fourteenth Amendment right to equal protection under the U.S. Constitution.

## COUNT FIVE

## RELIEF UNDER THE MANDAMUS ACT

59. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

60. Plaintiffs have a claim for mandamus relief under 28 U.S.C. § 1361 which provides the authority to compel the agency to perform a duty owed to Plaintiffs.  Defendants have failed to adjudicate Plaintiffs I-129 R-1 Petition when all requirements have been complied with. They have instead instituted a processing hold on immigration benefit petitions for foreign nationals from Nigeria, delaying the case indefinitely.

61. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002); *Citizens for Ethics and Responsibility in Wash. v. Cheney*, 593 F. Supp. 2d 194, 219 (D.D.C. 2009); see also *Liu*, 509 F. Supp. 2d at 10 (holding, in mandamus suit alleging unreasonable agency delay, that ""the statutory duty involved [in such cases] … does not specify what course

18

of action shall be taken. Rather, regardless of what course it chooses, the agency is under a duty

not to delay unreasonably in making that choice'"") (quoting *Sierra Club v. Thomas*, 828 F.3d

783, 794 (D.C. Cir. 1987)); *Aslam*, 531 F. Supp. 2d at 743 ("[T]he Court concludes that CIS has

a legal obligation to adjudicate Aslam's petition within a reasonable period of time."). The

Plaintiffs clearly meets all three of these criteria.

62. The Plaintiffs have fully complied with all of the statutory and regulatory

requirements for seeking R-1 nonimmigrant status, including submission of all necessary forms,

fees, and supporting documents.

63. The Defendants owe the Plaintiffs a duty to adjudicate their Form I-129 Petition for a

Nonimmigrant Worker petition pursuant to the statute and its implementing regulations, and

have unreasonably failed to perform that duty. See, e.g., *Northern States Power Co. v. U.S. Dep't

of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (issuing writ of mandamus to preclude

government defendant "from excusing its own delay" in complying with a clear statutory

obligation). The Plaintiffs have no alternative means to obtain adjudication of this petition and

their right to issuance of the writ is "clear and indisputable." *Gulfstream Aerospace Corp. v.

Mayacamas Corp.*, 485 U.S. 271, 289 (1988); see also *Power*, 292 F.3d at 784; *Matter of Sealed

Case*, 151 F.3d at 1063 (holding that mandamus is an appropriate remedy whenever a party

demonstrates a clear right to have an action performed by a government official who refuses to

act and that no other adequate means to attain the relief exist).

64. The Court's intervention is also appropriate because Defendants have failed to act

within a reasonable period of time. See, e.g., *Sierra Club*, 828 F.3d at 794 (holding that

"regardless of what course it chooses, the agency is under a duty not to delay unreasonably in

making that choice"); *Northern States Power*, 128 F.3d at 760 ("Given DOE"s repeated attempts

19

to excuse its delay … we find it appropriate to issue a writ of mandamus ….”); *Liu*, 509 F. Supp. 2d at 9-10 (holding that the APA requires the government to act within a reasonable period of time). Plaintiffs have already waited more than 140 days for adjudication of the Form I-129. This is an unacceptable and unreasonable delay.

65. Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law, to the ongoing harm and prejudice of the Plaintiffs.

66. Defendants' delay is without justification and has forced the Plaintiffs to resort to this Court for relief, and the Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

## COUNT SIX

### VIOLATION OF 5 U.S.C. §§ 702, 704,706 (APA CLAIMS)

67. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

68. Plaintiffs have suffered a "legal wrong" or have been "adversely affected or aggrieved" by agency action. 5 U.S.C. & 702.  Plaintiffs are aggrieved by agency action for which there is no other adequate remedy in court.  5 U.S.C. § 704.

69. Section 555 of the APA commands administrative agencies to conclude matters presented to the agency for decision "within a reasonable time." 5 U.S.C. § 555(b)("With due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it.") (emphasis added). "Agency action" includes the failure to act. 5 U.S.C. § 551(13).

70. The APA explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other such agency action. 5 U.S.C. § 702.

20

71. When a proper showing is made, "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The court must "hold unlawful and set aside agency action" that is: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "without observance of procedure required by law." 5 U.S.C. § 706(1); § 706(2)(A), (C), (D).

72. The Defendants' inaction is arbitrary, capricious, and exceeds Defendants' statutory authority. 5 U.S.C. § 706(c)(2).  The delays are a violation of the APA which mandates that a decision be made in a timely manner.

**COUNT SEVEN**

**DECLARATORY JUDGMENT**

73. The allegations contained in paragraphs 1 through 42 above are repeated and re-alleged as though fully set forth herein.

74. Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

75. Defendants in this case have failed to adjudicate Plaintiffs' I-129 Petition for a Nonimmigrant Worker. This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs.  Therefore, issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA and RFRA is warranted.

**PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Petitioner prays that the Court grant the following relief:

A.  Assume jurisdiction over the matter;

21

B.  Issue an order finding Defendants have substantially burdened Plaintiffs' sincere exercise of religion and that the government has not shown a compelling interest or that it is employing the least restrictive means in advancing that interest.

C.  Issue an order finding that Defendants have violated Plaintiffs' First, Fifth, and Fourteenth Amendment rights.

D.  Order Defendants and those working under them to immediately adjudicate Plaintiffs' I-129 Petition for Nonimmigrant Worker.

E.  Issue a declaratory judgment holding that Defendants' unreasonable delay in adjudicating the I-129 Petition for Nonimmigrant Worker is unlawful and contrary to law;

F.  Award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 and pursuant to 42 U.S.C. § 1988(b); and

G.  Grant any and all further relief this Court deems just and proper.

Dated this 22nd day of May, 2026

/s/ Olsi Vrapi

Olsi Vrapi
Attorney for Plaintiffs
Vrapi Weeks, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 466-5600
Fax:  (505) 466-6127
olsi@vrapiweeks.com

Julia Jagow
Attorney for Plaintiffs
Vrapi Weeks, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 466-5600
Fax:  (505) 466-6127
julia@vrapiweeks.com