IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARCHDIOCESE OF SANTA FE and
MARTIN NCHEDO UMEATUEGBU,

     Plaintiffs,

v.                                                                                    No. 1:26-cv-01666-KG-LF

MARKWAYNE MULLIN, *et al.*,

     Defendants.

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on Plaintiffs' Emergency Motion for Preliminary Injunction and Temporary Restraining Order, Doc. 2, filed May 22, 2026.  The Court held a hearing on this matter on Monday, June 1, 2026, at which counsel for Plaintiffs appeared and counsel for Defendants did not appear.  Having considered Plaintiffs' Complaint, Doc. 1, and Motion, the statements of counsel at the hearing, and the relevant law, for the reasons stated at the hearing and herein, the Court grants Plaintiffs' motion in part and issues a temporary restraining order ("TRO").

## I.    *Background*

Plaintiff Martin Umeatuegbu ("Father Martin") is a Nigerian citizen who has lived in the United States since July 22, 2024.  Doc. 2 at 2.  He entered the United States on an F-1 visa to complete his Master of Arts degree in Theology.  *Id.*  After finishing his studies, Father Martin applied for temporary employment for optional practical training ("OPT") and was granted an employment authorization valid from June 5, 2025, to June 4, 2026.  *Id.* at 3; *see also* 8 C.F.R. § 214.2(f)(10).

1

Father Martin works for Plaintiff Archdiocese of Santa Fe ("Archdiocese") as a Deacon. Doc. 2 at 3. The Archdiocese intends to sponsor Father Martin for an R-1 visa "so that he could continue his religious calling and continue to serve at the Archdiocese beyond his F-1 OPT expiration date." *Id.* The Archdiocese filed a Form I-129 Petition for Nonimmigrant Worker on December 31, 2025, requesting that Defendant U.S. Citizenship and Immigration Services ("USCIS") change Father Martin's status from F-1 to R-1 as of June 5, 2026. *Id.*

Relevant here, President Trump issued two proclamations, PP 10949 and PP 10998, which restrict the entry of foreign nationals from "high-risk" countries deemed to lack adequate screening and vetting information on its citizens. Doc. 2 at 3–4. Nigeria is included in the list of "high-risk" countries. *Id.* at 4. On January 1, 2026, USCIS issued a new Policy Memorandum ("PM-602-0194"), which placed a hold on all pending visa adjustment of status applications for foreign nationals from "high-risk" countries. *Id.* On March 30, 2026, USCIS issued an update stating that it has implemented "robust" screening and review processes and has lifted holds on certain petitions. *Id.* at 4–5.

Father Martin's F-1 visa and OPT employment authorization expire on June 4, 2026. *Id.* at 3. The Archdiocese seeks a TRO and/or preliminary injunction ordering USCIS to adjudicate Father Martin's Form I-129 Petition by June 4, 2026. *Id.* at 2.

## II.   *Analysis*

The Court concludes that (A) it may issue a TRO *ex parte*; (B) the Archdiocese is entitled to a TRO; (C) the Court will narrow the scope of the TRO; and (D) Plaintiffs are not required to post a bond.

### A.      *The Court may issue a TRO* **ex parte.**

Courts may issue a TRO without notice to the opposing party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(A)-(B).  A TRO issued *ex parte* may not extend beyond 14 days, "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."  Rule 65(b)(2).

Here, Plaintiffs satisfy both factors.  Plaintiffs have shown that they will suffer immediate and irreparable injury before the Government can be heard in this case. Furthermore, Plaintiffs "are not asking that notice not be provided to Defendants," Doc. 2 at 15, but emphasize that they have served a summons on each Defendant by certified mail and have sent a copy of the complaint and motion to the Chief of Civil Division for the District of New Mexico U.S. Attorney's Office to no avail.  Accordingly, Plaintiffs' efforts are sufficient for the Court to issue a TRO *ex parte*.

### B.      *The Archdiocese is entitled to a TRO.*

The Court concludes that the Archdiocese is entitled to a TRO.[1]  The requirements for a TRO are essentially the same as those for a preliminary injunction.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Duke*, 286 F. Supp. 3d 1239, 1251 (D.N.M. 2017).  In order for a party to be entitled to a temporary restraining order or a preliminary injunction, that party must show "(1) he or she will suffer irreparable injury unless the [TRO] issues; (2) the threatened

---

[1]The Court only addresses whether the Archdiocese is entitled to a TRO and will defer ruling on Father Martin's claims because both plaintiffs seek the same relief.

injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the [TRO], if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (alterations and citation omitted).

### 1.     *Likelihood of success on the merits*

As a threshold matter, the Archdiocese is likely to succeed on the merits under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ("RFRA"). RFRA prohibits the federal government from substantially burdening any person's religious exercise without demonstrating that the burden is the least restrictive means of furthering a compelling government interest. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). "A person whose religious exercise has been burdened...may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1. Under RFRA, a "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707–08 (2014).

The plaintiff bears the initial burden of making a prima facie showing that the United States' action "would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro Espirita*, 286 F. Supp. 3d at 1259. A government action "imposes a 'substantial burden' on religious exercise if it: (1) requires participation in an activity prohibited by a sincerely held religious belief, (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent to engage in conduct contrary to a sincerely held religious belief." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (internal quotation marks and citation omitted). "A sincerely held religious belief is

4

based on a claimant's particular beliefs rooted in their specific religious practice, which need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protections." *Calvary Albuquerque, Inc. v. Blinken*, 720 F. Supp. 3d 1138, 1151 (D.N.M. 2024) (internal quotation marks and citation omitted). Once a plaintiff makes a prima facie RFRA claim, the burden shifts to the government to show that the burden on plaintiff is the least restrictive means of advancing a compelling government interest. *Gonzales*, 546 U.S. at 428.

To begin, the Archdiocese, a religious organization based in the United States, is a "person" protected by RFRA. The Archdiocese has made a prima facie showing that USCIS's policy placing a hold on the adjudication of all pending visa status change applications imposes a substantial burden on their sincere religious exercise. The First Amendment "protects the right of churches...to decide matters of 'faith and doctrine' without government intrusion." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1028 (10th Cir. 2022) (alteration, internal quotation marks, and citation omitted). Churches do not "enjoy a general immunity from secular laws." *Id.* However, "freedom to select the clergy, where no improper methods of choice are proven, is part of the free exercise of religion protected by the First Amendment against government interference." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012) (alteration, internal quotation marks, and citation omitted); *see also Tucker*, 36 F.4th at 1028 (noting that part of a religious institution's autonomy "with respect to internal management decisions" is "the selection of the individuals who play certain key roles").

Under these principles, USCIS's policy infringes on the Archdiocese's right to select its minister of choice. USCIS's indefinite hold on the adjudication of any visa status change petitions is "depriving the church of control over the selection of those who will personify its beliefs." *Hosanna-Tabor*, 565 U.S. at 188. USCIS's action therefore "prevents participation in

conduct motivated by a sincerely held religious belief," and thus imposes a substantial burden on the Archdiocese's sincere religious exercise. *Hobby Lobby*, 723 F.3d at 1138.

Moreover, the Government is unlikely to demonstrate that the policy is the least restrictive means of furthering a compelling governmental interest. The Government's interest in restricting the entry of noncitizens from "high risk" countries and imposing stricter screening processes for resident noncitizens is likely a compelling government interest. However, USCIS has already lifted its adjudicative holds on certain categories of petitions. Doc. 1 at 4–5. So, USCIS's policy is likely not the least restrictive means of implementing more robust screening processes for visa status change applications. Therefore, the Court concludes that the Archdiocese has a substantial likelihood of success on the merits of their RFRA claim.

### 2. The Archdiocese will suffer irreparable injury absent a TRO.

The Archdiocese has satisfied the irreparable harm factor. The Tenth Circuit has "explicitly held...that establishing a likely RFRA violation satisfies the irreparable harm factor." *Hobby Lobby*, 723 F.3d at 1146. USCIS's policy placing a hold on the adjudication of all visa status change applications has severely hindered the Archdiocese's ability to exercise its First Amendment right "to decide matters of faith and doctrine" by employing its minister of choice. *See Tucker*, 36 F.4th at 1028.

### 3. The threatened injury to the Archdiocese outweighs any damages suffered by the United States.

Issuing a TRO will preserve the status quo until Plaintiffs' Form I-129 petition is adjudicated. A TRO in this case would not cause USCIS any harm by preventing them from continuing to generally enforce immigration laws and regulations. Rather, the Archdiocese will suffer harm as the expiration of Father Martin's F-1 visa and OPT employment authorization will

"deprive the church of control over the selection of those who will personify its beliefs."
*Hosanna-Tabor*, 565 U.S. at 188.

> 4. **A TRO would not be adverse to the public interest.**

Issuing a TRO is in the public interest because the Archdiocese has demonstrated a likely

violation of RFRA. "[I]t is always in the public interest to prevent the violation of a party's

constitutional rights." *Hobby Lobby*, 723 F.3d at 1147 (internal quotation marks and citation

omitted). "Although RFRA violations are not constitutional violations, Congress has given

RFRA similar importance by subjecting all subsequent congressional enactments to a strict

scrutiny standard of review unless those enactments explicitly exclude themselves from RFRA."

*Id.* For these reasons, "[b]ecause [the plaintiffs] have demonstrated a likely violation of their

RFRA rights, an injunction would be in the public interest." *Id.*

C. **The Court will narrow the scope of the TRO.**

As a final matter, the Court will narrow the scope of relief requested by Plaintiffs.

Plaintiffs ask that the Court order Defendants to adjudicate its pending I-129 Petition by June 4,

2026. Doc. 2 at 2. "The scope of the remedy must be no broader and no narrower than

necessary to redress the injury" alleged by Plaintiffs. *California v. Azar*, 911 F.3d 558, 584 (9th

Cir. 2018). "Crafting a preliminary injunction is an exercise of discretion and judgment," and

the Court "need not grant total relief sought by the applicant but may mold its decree to meet the

exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571,

579–80 (2017).

Here, the record is not sufficiently developed concerning the impact on the Government

of an order mandating that USCIS adjudicate Plaintiffs' petition. As a result, the Court

concludes that the TRO must be tailored to redress Plaintiffs' immediate injury, namely the

7

expiration of Father Martin's F-1 visa and OPT employment authorization, which will deprive the Archdiocese of its choice of minister. Therefore, the Court orders a stay on the expiration of Father Martin's F-1 visa and OPT employment authorization, which preserves Father Martin's legal status and permits him to continue working until the Government responds to Plaintiffs' motion for a preliminary injunction.

**D.      *The Court declines to require Plaintiffs to post a bond.***

Lastly, the Court declines to require Plaintiffs to post a bond under Federal Rule of Civil Procedure 65(c). Rule 65(c) permits the Court to order the moving party to give security if the United States will suffer any damages because of the TRO. No security is necessary in this case because granting the TRO does not alter the status quo pending the hearing for preliminary injunction.

**II.     *Conclusion***

The Archdiocese is entitled to a TRO staying the expiration of Father Martin's F-1 visa and OPT employment authorization. The Court need not analyze the Archdiocese's additional claims because it grants relief under RFRA.

IT IS THEREFORE ORDERED that this Temporary Restraining Order be issued immediately staying the expiration of Father Martin's F-1 visa and OPT employment authorization on June 4, 2026. This temporary restraining order shall remain in effect until such time as this Court specifically orders otherwise, but for a period not to exceed 14 days from the entry of this Order. See Fed. R. Civ. P. 65(b)(2). Should the Government fail to respond before the expiration of this TRO, the Court will entertain a motion to extend the TRO.

IT IS FURTHER ORDERED that Plaintiffs must serve Defendants with copies of all documents entered on the docket in this case, including this Temporary Restraining Order, no

later than June 8, 2026. A hearing on whether a preliminary injunction shall be issued will be

scheduled forthwith.  Defendants shall file a response to Plaintiffs' Complaint and Motion for

Preliminary Injunction as set forth in the Federal Rules of Civil Procedure.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.

9